UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELISEO GUTIERREZ CASTANEDA,<br><br>Petitioner,<br><br>v.<br><br>PATRICIA HYDE et al.,<br><br>Respondents. | Civil Action No. 25-cv-11549-DJC |

**RESPONDENTS' OPPOSITION TO**
**PETITION FOR WRIT OF HABEAS CORPUS**

Respondents Patricia Hyde, Michael Krol, Todd Lyons, and Kristi Noem, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, submit this opposition to Petitioner Eliseo Gutierrez Castañeda's Habeas Petition.  Doc. No. 1. Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 and this Court's Service Order.  Doc. No. 3.[1]

**INTRODUCTION**

This Court cannot extend the writ of habeas corpus unless an individual "is in custody in violation of the Constitution or laws or treaties of the United States". 28 U.S.C. § 2241(c)(3).  A habeas petitioner must also name his immediate custodian as a respondent to the action because a writ of habeas corpus granted by a district court "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243.  Here, Petitioner did not name his immediate

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

custodian and he fails to carry his burden to demonstrate that his arrest and detention by U.S. Immigration and Customs Enforcement ("ICE") violate the Immigration and Nationality Act ("INA"), its implementing regulations, or the Constitution.  As such, this Court must deny the Petition.

Petitioner does not contend that his arrest violated any statutory or regulatory provision. He instead claims that ICE's detention of him "without a warrant and prior to initiating any removal proceedings" violates the Fifth Amendment's Due Process Clause.  Doc. No. 1, ¶ 12. As set forth below, ICE's arrest of Petitioner was supported by a warrant and ICE served Petitioner with a Notice to Appear ("NTA") instituting removal proceedings against him on the day of his arrest.  *See* Declaration of Assistant Field Office Director, Keith Chan, ¶¶ 7-8, attached as Exhibit A.  His due process claim is utterly without merit as Supreme Court has repeatedly "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Finally, denial of this Petition is appropriate as Petitioner can seek release before an immigration judge ("IJ") through a bond hearing in Immigration Court—currently scheduled for June 16, 2025—and therefore Petitioner has failed to exhaust his available remedy to obtain the relief he asks this Court to provide in the first instance.  Exh. A, ¶ 9.

## BACKGROUND

### A. Petitioner's Immigration History.

Petitioner is a native and citizen of Honduras.  *Id.*, ¶ 6.  Petitioner entered the United States unlawfully without inspection or admission on an unknown date and unknown place.  *Id.* On May 28, 2025, ICE encountered Petitioner and determined that Petitioner lacked lawful status in the United States and therefore arrested and detained him pursuant to its authority at 8 U.S.C.

§ 1226(a). *Id.*, ¶ 7. ICE issued an administrative Form I-200 Warrant for Arrest of Alien on May 28, 2025 in support of the arrest. *Id.* On the same day, ICE also served Petitioner a NTA placing him in removal proceedings and charging him as inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) in that he is present in the United States without admission or parole. *Id.*, ¶ 8. ICE also made the determination to maintain Petitioner in custody. *Id.* Petitioner is scheduled for a bond hearing in the Chelmsford (MA) Immigration Court on June 16, 2025. *Id.*, ¶ 9.

### B. Petitioner's Habeas Petition and this Court's Standing Order.

Petitioner filed this Petition on May 29, 2025. Doc. No. 1. He contends that his arrest and detention are unconstitutional because ICE "detained him without a warrant and prior to initiating any removal proceedings, in violation of his due process rights." *Id.*, ¶ 12. He claims that he "is at risk of imminently being removed from Massachusetts." *Id.*, ¶ 14. As such, Petitioner requests this Court enjoin any transfer from the district and order his immediate release. *Id.*, PRAYER FOR RELIEF.

On May 29, 2025, this Court entered an Order that directed Respondents to respond to the Petition by June 13 and ordered that ICE not transfer Petitioner to a district outside of Massachusetts without providing advance notice of the intended move. Doc. No. 3.

### C. Statutory and Regulatory Framework for Enforcement of Immigration Law.

The Immigration and Nationality Act provides a statutory scheme for the civil detention of aliens pending a decision during removal proceedings as well as once a final order of removal has been entered. *See generally* 8 U.S.C. §§ 1225, 1226, 1231. The time and circumstances of entry, as well as the stage of the removal process, determines where an alien falls within this scheme and whether detention of the alien is discretionary or mandatory.

For aliens who have entered the United States without inspection or who have been admitted but have stayed beyond the period of admission, 8 U.S.C. § 1226 "generally governs the process of arresting and detaining . . . [noncitizens] pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Section 1226(a) provides the default rule that an alien "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). As the Supreme Court has explained, this provision "creates authority for *anyone's* arrest or release under § 1226—and it gives the Secretary broad discretion as to both actions…." *Nielsen v. Preap*, 586 U.S. 392, 409 (2019) (emphasis in the original).

**1. Detention and Initiation of Removal Proceedings under 8 U.S.C. § 1226(a).**

As explained by the U.S. Court of Appeals for the First Circuit, "[t]he text of the INA confers broad authority upon ICE to conduct civil arrests." *Ryan v. U.S. Immigr. & Customs Enf't,* 974 F.3d 9, 19 (1st Cir. 2020). Pursuant to 8 U.S.C. § 1226(a), immigration authorities can arrest an alien with an administrative warrant and then either continue detention for removal proceedings or to release the alien on "bond … or conditional parole." *Id.* § 1226(a)(1)-(2). Per 8 U.S.C. § 1357(a)(2), an ICE officer can arrest an alien without an administrative warrant "if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest …".[2]

---

[2] Pursuant to regulation, if ICE arrests an individual without a warrant, such individual must be "examined" after the arrest to determine if there is prima facie evidence that the individual is present in the United States in violation of immigration laws and ICE must refer the case to an immigration judge for removal proceedings and must provide notice of the reasons for his arrest and the right to be represented in removal proceedings. *See* 8 C.F.R. § 287.3.

Once arrested under Section 1226(a), ICE can continue detention or can release an alien "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to proper or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Per regulation, ICE should decide within 48 hours, absent extraordinary circumstances, "whether the alien will be continued in custody or released on bond or recognizance and whether a notice of appear and warrant of arrest … will be issued." 8 C.F.R. § 287.3(d). If the immigration officer opts for continued detention, the alien can seek review of that decision at a bond hearing before an Immigration Judge ("IJ"). 8 C.F.R. § 236.1(d)(1). An IJ's decision to continue detaining an alien may be appealed to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 236.1(d)(3).

ICE initiates removal proceedings with the issuance of a NTA with the Immigration Court that has jurisdiction over the location of the individual. *See* 8 U.S.C. § 1229; 8 C.F.R. §§ 239.1, 1003.14. Once an NTA is filed with the Immigration Court, the IJ "shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). Such proceeding "shall be the sole and exclusive procedure for determining whether an alien may be … removed from the United States." *Id.* § 1229a(a)(3).

An alien can apply for whatever forms of relief from removal he may be eligible. *Id.* § 1229a(c)(4). If the IJ grants relief from removal and the government does not appeal to the BIA or is unsuccessful in such appeal, then the individual obtains lawful status and is not subject to removal from the United States. If, however, the IJ orders an alien removed, such alien can appeal to the BIA and is not subject to removal until the BIA issues a decision on the appeal. *Id.* § 1229a(c)(5); 8 C.F.R. § 1241.1(a). If the BIA affirms the IJ's denial of an application for relief from removal, an alien can file a petition for review ("PFR") with the circuit court and can seek a

5

stay of removal while the PFR is pending. 8 U.S.C. § 1252(a)(5) ("a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter…").

## STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions unless Congress had separately stripped the court of jurisdiction to hear the claim.

To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner."); *Farrell v. Lanagan,* 166 F.2d 845, 847 (1st Cir. 1948) ("The burden of proof is on the petitioner to establish denial of his constitutional rights. The court must be convinced by a preponderance of evidence.").

## ARGUMENT

**A. Petitioner Fails to Name an Appropriate Respondent to this Action.**

Petitioner fails to name his immediate custodian at Plymouth County Correctional Facility as Respondent to this Petition as required by statute. As such, per Supreme Court and First Circuit precedent, this Court lacks jurisdiction over the Petition.

Petitioner filed the Petition pursuant to 28 U.S.C. § 2241 which provides in relevant part that "[w]rits of habeas corpus may be granted by … the district courts within their respective jurisdictions" where a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. A writ of habeas corpus granted by a district court "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. A district court therefore must have jurisdiction over the custodian because the "writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Vasquez v. Reno*, 233 F.3d 688, 690 (quoting *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 494-95 (1973)).

In *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004), the Supreme Court made clear an individual challenging her detention through a habeas petition must file that petition in the district where she is detained and must name the custodian detaining her in such district as the respondent. The Supreme Court explained that when considering "challenges to present physical confinement … the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Id.* at 439. The Court stated that "there is generally only one proper respondent to a given prisoner's habeas petition," the immediate custodian who has "the ability to produce the prisoner's body before the habeas court." *Id.* As such, "the proper respondent is the warden of the facility where the prisoner is held, not the Attorney General or some other remote supervisory official." *Id.* at 435.

The First Circuit, in *Vasquez,* similarly held that "an alien who seeks a writ of habeas corpus contesting the legality of his detention by [ICE] normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained." 233 F.3d at 690.

Courts within this district routinely hold that they lack jurisdiction over a habeas petition if the alien names improper respondents such as supervisory officials like the ICE Boston Field Office Director ("FOD"), even if this individual provides oversite throughout the New England region.  For example, in *Duy Tho Hy v. Gillen*, 588 F. Supp. 2d 122, 124-25 (D. Mass. 2008), the Court held that the ICE FOD was not a proper party, explaining that "[b]ecause the petitioner's *immediate* custodian is the only proper respondent, a supervisory officer of any kind, … is not a proper party." *Id.* at 125 (emphasis in original).  *See also McPherson v. Holder*, No. 14-CV-30207-MGM, 2015 WL 12861171, at *2 (D. Mass. Mar. 4, 2015) (Explaining that "regardless of where petitioner was detained at the time of filing, under First Circuit jurisprudence, Attorney General Eric Holder does not have day-to-day control over the facility where the petitioner is held. Thus, petitioner has not named the proper respondent, and on this basis alone, the petition may be dismissed without prejudice to its refiling with the correct respondent."); *Pen v. Sessions*, No. CV 17-10626-NMG, 2017 WL 2312822, at *1–2 (D. Mass. May 25, 2017) (Holding that "the proper respondent is the warden of the institution where Pen was confined when the petition was filed. … The other persons identified as respondents are not proper parties to this action.").

Dismissal of this Petition is proper as Petitioner inappropriately named supervisory officials, rather than his immediate custodian at Plymouth County, and no exceptional circumstances excused the naming of his immediate custodian.

### B. Petitioner's Detention is Lawful and therefore the Petition must be Denied.

Additionally, ICE's detention of Petitioner is authorized by statute, regulation, and comports with the Constitution.  As such, this Petition must be denied.

1. **Petitioner's Detention is Authorized by Statute.**

ICE detained Petitioner pursuant to 8 U.S.C. § 1226(a) which allows for the detention of aliens for the purpose of removal proceedings. Exh. A, ¶ 8. This authority provides that ICE may detain an alien "pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). This provision "creates authority for *anyone's* arrest or release under § 1226—and it gives [ICE] broad discretion as to both actions…." *Nielsen*, 586 U.S. at 409 (emphasis in the original). Here, Petitioner sets forth no statute, regulation, or case law that supports his claim that ICE's detention and arrest of him for purpose of removal proceedings was unlawful. For these reasons, Petitioner's detention is authorized by statute and there is no basis for this Court to order his release.

2. **Petitioner's Detention is Constitutional.**

Petitioner argues that he was "unlawfully detained" in violation of the Fifth Amendment on May 28, 2025 "without a warrant and without any removal proceedings having been initiated." Doc. No. 1, ¶¶ 1, 3. This assertion as to his arrest without a warrant, however, is factually incorrect as ICE obtained an administrative warrant supporting his arrest on May 28, 2025. Exh. A, ¶ 7. In any event, ICE has authority to arrest "any alien in the United States" if an ICE officer 'has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest". 8 U.S.C. § 1357(a)(2). As such, his constitutional claim concerning his arrest and detention as it relates to a warrant is wholly without merit.

Further, as to his claim that is arrest was constitutionally infirm because it was done prior to the initiation of removal proceedings, there is no statutory, regulatory, or constitutional requirement that ICE initiate removal proceedings prior to arresting and detaining an alien. *See* 8

9

U.S.C. § 1229 (setting forth the statutory requirements for initiation of removal proceedings); 8 C.F.R. § 239.  Instead, per regulation, ICE should decide within 48 hours, absent extraordinary circumstances, "whether the alien will be continued in custody or released on bond or recognizance and whether a notice of appear and warrant of arrest … will be issued." 8 C.F.R. § 287.3(d).  And, again, Petitioner's claim is factually incorrect as ICE served a NTA on Petitioner the day of his arrest to institute removal proceedings, thus complying with the required regulation and plainly not violating any due process right.   Exh. A, ¶ 8.

Petitioner's claim that his detention is unconstitutional is unsupported and without merit as the Supreme Court has repeatedly "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore,* 538 U.S. at 523 (2003); *Wong Wing v. U.S.* 163 U.S. 288, 235 (1896) (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character.").

Here, Petitioner is detained for the limited purpose of removal proceedings and can seek a bond hearing to contest such detention.  As such, per Supreme Court precedent, his detention does not violate the Constitution.  *See Wong Wing,* 163 U.S. at 235 ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid").

To ensure an alien's detention under Section 1226(a) comported with the Fifth Amendment's Due Process Clause, the First Circuit in *Hernandez-Lara v. Lyons* held that the government must bear the burden of proof at a bond hearing before an IJ.  10 F.4th 19, 39-41 (1st Cir. 2021).  But the First Circuit cast no aspersion as to the constitutionality of detention of aliens under § 1226(a) by ICE generally and instead recognized that the "prompt execution of removal orders is a legitimate governmental interest which detention may facilitate.") (cleaned up).

10

Here, there is no dispute that Petitioner is detained for the limited purpose of removal proceedings where he can seek a bond hearing and pursue relief from removal. His detention is not indefinite, it will end upon an order of release from an IJ or upon the conclusion of his proceedings. As another session of this Court recently recognized, a brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution. *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (Recognizing that detention "for a period of less than three months' time … does not amount to an unconstitutional duration.").

Petitioner is lawfully detained pursuant to statute, regulation, and the Constitution and this Court therefore lacks authority to order Petitioner's release from custody by extending the requested writ under 28 U.S.C. § 2241(c)(3).

### C. Petitioner has Failed to Exhaust his Administrative Remedies.

While Petitioner asks this Court to order his release despite his eligibility to seek such relief from an IJ in Immigration Court, as the First Circuit has explained, "it is Congress—not the judiciary—that has the responsibility of prescribing a framework for the vindication of those rights." *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 24 (1st Cir. 2007). Here, Congress has established a statutory framework in which Petitioner can seek release from detention while pursuing relief from removal. Explained further by the First Circuit, "[w]hen Congress speaks clearly and formulates a regime that satisfies constitutional imperatives, the courts must follow Congress's lead." *Id.* This remains the case "whether a court approves or disapproves of an agency's *modus operandi*." *Id.*

To the extent Petitioner is claiming that his detention is unwarranted because he is not a danger to the community or a flight risk, such claim must be presented to an IJ in a bond hearing,

11

not to the district court via a Habeas Petition. This failure to exhaust provides a basis for dismissal of this Petition. As the First Circuit has explained, "[g]enerally speaking, a plaintiff's failure to exhaust "her administrative remedies precludes her from obtaining federal review of claims that would have properly been raised before the agency in the first instance." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). While there is no statutory mandate to exhaust a claim for release that could be made to an IJ prior to presenting such claim to the district court, "the court's discretion governs whether a petitioner must exhaust his administrative remedies before applying for relief in federal court." *Gillen*, 588 F. Supp. 2d at 125.

Common-law exhaustion "allows an agency the first opportunity to apply its expertise and obviates the need for judicial review in cases in which the agency provides appropriate redress." *Brito,* 22 F.4th at 256 (cleaned up) (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175–76 (1st Cir. 2016)). Some courts have declined to require a habeas petitioner to seek a bond hearing before an IJ prior to seeking similar relief if the pursuit of a bond hearing would be futile or if the agency has "predetermined the issue before it." *See Gillen*, 588 F. Supp. 2d at 125 (Declining to require exhaustion when "the BIA issued a precedent decision before Petitioner was denied a hearing holding that individual's in Petitioner's position are subject to mandatory detention.").

Here, exhaustion is not futile because Petitioner will not be raising an issue at the bond hearing that the IJ lacks authority to decide such as whether the alien or the government bears the burden of proof. *See Figueroa v. McDonald*, 680 F. Supp. 3d 18, 23 (D. Mass. 2018) (Excusing petitioner's failure to appeal bond denial to the BIA because "the agency would not have had jurisdiction to consider his due process arguments even if they had been presented."). Additionally, Petitioner's eligibility for bond is not in dispute and has not been predetermined. As

such, Petitioner can seek release from detention though a bond hearing. He can appeal a bond decision to the BIA if necessary. Petitioner therefore has access to the relief he requests this Court order and this weighs in favor of requiring exhaustion and denying this Petition on this additional basis.

### D. ICE has Discretion to Determine Detention Location and this Court Lacks Jurisdiction to Dictate Petitioner's Detention Location.

Petitioner appears to have filed this Petition to forestall a transfer from the District of Massachusetts. Doc. No. 1, ¶ 14. This Court must reject Petitioner's invitation to micromanage ICE's determinations as to the placement of detainees in its custody.

Congress provided ICE with discretion as to the detention location of individuals within its custody. Per 8 U.S.C. § 1231(g)(1), ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See Edison C. F. v. Decker*, No. CV 20-15455 (SRC), 2021 WL 1997386, at *6 (D.N.J. May 19, 2021) (Acknowledging that "Congress has provided the Government with considerable discretion in determining where to detain aliens pending removal or the outcome of removal proceedings."). This Court should decline Petitioner's request to mandate placement at a detention facility within the district because any transfer outside of this district would comport with statute and the Constitution. *See Avramenkov v. I.N.S.,* 99 F. Supp. 2d 210, 214 (D. Conn. 2000) (Holding that a transfer "does not constitute a violation of plaintiff's due process or statutory rights" and that ICE "is not obligated to detain aliens where their ability to obtain representation and to present witnesses is at its greatest.").

Additionally, this Court lacks jurisdiction to second-guess ICE's detention location decision or to order ICE to detain Petitioner at a different facility. *See Guangzu Zheng v. Decker*, No. 14CV4663 MHD, 2014 WL 7190993, at *15–16 (S.D.N.Y. Dec. 12, 2014), *aff'd*, 618 F.

App'x 26 (2d Cir. 2015) (Court lacked jurisdiction over the location of an ICE detainee as that is a discretionary decision that is barred from judicial review); *P.M. v. Joyce,* No. 22-CV-6321 (VEC), 2023 WL 2401458, at *5 (S.D.N.Y. Mar. 8, 2023) ("The Court does not have jurisdiction to review [ICE's] discretionary authority to transfer detainees."); *Mathurin v. Barr*, No. 6:19-CV-06885-FPG, 2020 WL 9257062, at *11 (W.D.N.Y. Apr. 15, 2020) ("Courts accordingly have held that they lack jurisdiction to restrict [ICE's] decisions about whether and where to transfer aliens between facilities."); *Avramenkov,* 99 F. Supp. 2d at 214 (Explaining that "the court has no jurisdiction to review [ICE's] decision to transfer an alien from one locale to another to commence removal proceedings.").

**E. The Court Lacks Jurisdiction to Review ICE's Initiation of Removal Proceedings.**

Petitioner does not explicitly challenge ICE's initiation of removal proceedings against him, and any such claim would not be subject to judicial review. Section 1252(g) of Title 8 of the United States Code strips courts of "jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by [ICE] to ***commence proceedings*** … against any alien under this chapter" (emphasis added). Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). The Supreme Court explained that Congress imposed the jurisdictional limitation in Section 1252(g) "to give some measure of protection to 'no deferred action' decisions and similar discretionary decisions" because "INS's exercise of discretion [to grant deferred action] opened the door to litigation in instances where the INS chose *not* to exercise it." *Id.* at 484-85.

Section 1252(g) plainly applies to decisions and actions to *commence* proceedings that ultimately may end in the execution of a final removal order. *See Jimenez-Angeles v. Ashcroft*,

14

291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g) . . . to include not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding.") (all emphasis in original); *Obado v. Superior Ct. of New Jersey Middlesex Cnty.,* No. CV 21-10420 (FLW), 2022 WL 283133, at *4 (D.N.J. Jan. 31, 2022) ("Because [p]etitioner challenges the decision to commence and adjudicate removal proceedings against him, the [c]ourt lacks jurisdiction to direct [respondents] to terminate [p]etitioner's NTA and/or halt his removal proceedings.").

Section 1252(g) further bars district courts from considering challenges to the *method* by which ICE chooses to commence removal proceedings. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also from reviewing "ICE's decision to take him into custody and to detain him during removal proceedings"); *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to arrest [petitioner], clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g).").

And courts in this district have held that § 1252(g) precludes judicial review of both constitutional and statutory claims that arise from the commencement of removal proceedings. *Candra v. Cronen*, 361 F. Supp. 3d 148, 156 (D. Mass. 2019) (explaining that a petitioner's "attempt to frame his claim in due process language does not change [the] result" that section 1252(g) strips jurisdiction); *Anderson v. Moniz*, No. CV 21-11584-FDS, 2022 WL 375231, at *4 (D. Mass. Feb. 7, 2022) ("Section 1252(g) can serve as a jurisdictional bar even when a petitioner contends that his due-process rights were violated.").

For these reasons, this Court lacks jurisdiction to consider any cause or claim arising from ICE's decision to commence removal proceedings against Petitioner.

### F. The Court Lacks Jurisdiction to Review ICE's Arrest and Detention of Petitioner.

This Court also lacks jurisdiction to review ICE's discretionary decision to arrest and detain Petitioner. This is because Congress has made clear that ICE's "discretionary judgment regarding the application of [§ 1226] shall not be subject to review." 8 U.S.C. § 1226(e). Section 1226(e) specifically directs that "[n]o court may set aside any action or decision by [ICE] under this section regarding the detention of any alien or the revocation or denial of bond or parole." *Id.* This provision blocks judicial review of ICE's discretionary decisions to arrest and detain aliens subject to 8 U.S.C. § 1226.

As the Supreme Court explained in *Demore*, 538 U.S. at 516-17, this provision applies to strip jurisdiction of judicial review to ICE's discretionary judgments and decisions to arrest and detain aliens subject to 8 U.S.C. § 1226. *See also Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018) (Section "1226(e) precludes an alien from challenging a discretionary judgment by the [Secretary] or a decision that the [Secretary] has made regarding his detention or release.") (cleaned up). The Supreme Court in *Jennings* explained that Section 1226(e) would not bar jurisdiction of a challenge to "the extent of the Government's detention authority under the statutory framework as a whole." *Id.* Jurisdiction would also not be stripped if the challenge was to "the constitutionality of the entire statutory scheme under the Fifth Amendment." *Id.* at 296.

But, if the challenge is simply to ICE's discretionary decision to arrest and detain an alien, as Petitioner seemingly sets forth here, then Section 1226(e) squarely applies to strip a court of jurisdiction to review such claim. *See Nielsen*, 586 U.S. at 401 (Explaining that

16

Section 1226(e) "applies only to 'discretionary' decisions about the 'application of § 1226 to particular cases."). Courts within this district and around the country recognize the distinction between a challenge to the statutory or constitutional framework concerning detention and an individual challenge to ICE's discretionary decision to arrest and detain. *See Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 474–75 (D. Mass. 2010) (Finding that "Congress has evinced clear and unequivocal intent that discretionary bail determinations under § 1226(a) should be made" by ICE in the first instance subject to review by the IJ and the BIA and that the "court would apparently lack jurisdiction to review a discretionary bail determination made pursuant to § 1226(a)" on account of Section 1226(e)); *Hamada v. Gillen*, 616 F. Supp. 2d 177, 181 (D. Mass. 2009) (Concluding that district court lacks jurisdiction under Section 1226(e) to review decision to detain and deny bond to alien.); *Aguayo v. Martinez*, No. 120CV00825DDDKMT, 2020 WL 2395638, at *5–6 (D. Colo. May 12, 2020) (Explaining that because petitioner was "not challenging the statutory framework as a whole—he's challenging its application in his case—[] Section 1226(e) applies and strips the Court of jurisdiction.").

Under the system established by Congress, Petitioner must request release from ICE custody to an IJ, and if dissatisfied with the outcome of such request, to the BIA. The district courts, however, have no role in making such a determination under the facts as presented. As the First Circuit has explained in a case involving ICE's discretionary decisions regarding where and when to make arrests pursuant to 8 U.S.C. § 1226(a), "[i]t is not for [courts] to say whether ICE's strategy is sound public policy, or conversely, whether that strategy is antithetic to sound public policy. That question lies within the domain of the politically accountable branches of the federal and state governments. Our task is simply to decide the pertinent legal issues ….". *Ryan v. U.S. Immigr. & Customs Enf't,* 974 F.3d 9, 18–19 (1st Cir. 2020).

As another session of this Court has explained: "By law, the power to establish immigration controls, and to establish a process for resolving immigration disputes, rests with Congress, subject only to the restraints of the Constitution." *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *2 (D. Mass. Oct. 1, 2018). Stated further by Chief Judge Saylor, "Congress has created a statutory procedure that does not include a role for the district courts; indeed, it has expressly stripped district courts of jurisdiction to hear such disputes. Such issues are remitted by law to the immigration authorities, subject to review by the Courts of Appeals." *Id.* This Court cannot "ignore or defy the law, even in highly sympathetic circumstances. To do so would be a fundamental violation of its most basic responsibilities." *Id.*

Here, Petitioner's detention is lawful and he has not raised any "pertinent legal issues" that this Court has jurisdiction to review. As such, this Petition must be denied.

## CONCLUSION

For the above reasons, Petitioner's detention is lawful pursuant to statute, regulation, and the Constitution. Additionally, Petitioner has failed to exhaust his administrative remedies prior to filing this Petition. Finally, the Court lacks jurisdiction over ICE's discretionary decisions to arrest, detain, and initiate removal proceedings against Petitioner. As such, this Court must deny his request for release.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: June 13, 2025          By:    */s/ Mark Sauter*
                                     Mark Sauter
                                     Assistant United States Attorney
                                     United States Attorney's Office
                                     1 Courthouse Way, Suite 9200
                                     Boston, MA 02210
                                     Tel.:(617) 748-3347
                                     Email: mark.sauter@usdoj.gov

18

**CERTIFICATE OF SERVICE**

      I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: June 13, 2025                    By:    */s/ Mark Sauter*
                                                        Mark Sauter
                                                        Assistant United States Attorney